IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )    10-3-UNA |
| | ) |
| CERAMIC PROTECTION | ) |
| CORPORATION OF AMERICA | ) |
| | ) |
| Defendant. | ) |

### DEFERRED PROSECUTION AGREEMENT

**I.   PARTIES**

This Deferred Prosecution Agreement (the "Agreement") is entered into between the United States of America, by and through the United States Attorney's Office for the District of Delaware (collectively, the "United States"), and Alanx Wear Solutions ("Alanx Wear") and Alanx Wear's corporate successor-in-interest, Ceramic Protection Corporation of America (collectively, "CPC America"), by and through their authorized representatives.

**II.   PREAMBLE**

As a preamble to this Agreement, the parties agree to the following:

A.   CPC America is a corporation organized under the laws of Delaware, with its principal place of business located at 101 Lake Drive, Newark, Delaware 19702;

B.   On or about March 10, 2005, CPC America entered into a supply agreement (the "ArmorWorks Contract") with ArmorWorks, Incorporated ("ArmorWorks") that cited ArmorWorks as a prime contract system integrator to supply armor to the United States under certain military procurement contracts, and CPC America as a manufacturer of ceramic based body armor plates;

C.   The ArmorWorks Contract obligated CPC America to supply ArmorWorks with ballistic

FILED

JAN 13 2010

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

ceramic plates for Enhanced Small Arms Protective Inserts ("ESAPIs") to be utilized in the manufacture of protective ballistic body armor procured by the United States military;

D. The ArmorWorks Contract stated, in part, ". . . Further, each plate shall be made of the same material, according to the same formula, and by the same process as the plates that passed the Government's first article testing";

E. On or about August 3, 2005, ArmorWorks received first article testing approval for production using CPC America ballistic ceramic plates for ESAPIs;

F. On or about December 15, 2005, the Defense Logistics Agency adopted the first article approval for the production by ArmorWorks of ESAPIs;

G. On or about August 29, 2006, in response to a letter from ArmorWorks concerning changes in materials and the method of manufacture of ceramic tiles, CPC America sent a letter to ArmorWorks denying that changes had occurred, stating in pertinent part: "Specifically, in response to your speculation that Alanx [predecessor of CPC America] has had a process change or materials process change, the answer is that there has been no process change or materials process change since the qualification of our ESAPI product.";

H. As of the date of this Agreement, CPC America is no longer in the business of manufacturing ceramic based body armor plates utilized in the manufacture of protective ballistic body armor and does not intend to resume such business.

I. The United States alleges that individuals acting on behalf of CPC America conspired to, and did, knowingly certify that the ceramic ballistic plates CPC America provided to ArmorWorks pursuant to the ArmorWorks Contract were manufactured in accordance with all required specifications, when, in fact, individuals acting on behalf of CPC America knew they were not, and that the August 29, 2006 letter falsely asserted that there had no changes since first

article approval.

## III. TERMS AND CONDITIONS OF DEFERRED PROSECUTION AGREEMENT

1. CPC America shall waive indictment and agrees that the United States will file a criminal information (hereinafter "the Information") in the United States District Court for the District of Delaware, charging CPC America with one count of making a material false statement, in violation of Title 18, United States Code, Section 1001, relating to the August 29, 2006 letter from CPC America to ArmorWorks described in the Preamble.

2. CPC America accepts and acknowledges responsibility for its conduct as set forth above in the Preamble. CPC America further agrees to demonstrate its future good conduct by complying with all laws and regulations of the United States.

3. CPC America agrees to waive its right to raise any defense relating to the statute of limitations with regard to the charge set forth in the Information, and agrees that the applicable statute of limitations period for any charges arising out of the conduct described in the Preamble shall be tolled during the term of this Agreement. CPC America further agrees not to assert any right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, or Title 18, United States Code, Section 3161, or Federal Rule of Criminal Procedure 48(b), or any local rule of the District of Delaware, with respect to the Information.

4. In light of the fact that CPC America no longer intends to provide articles for the military, and in consideration for the other terms recited herein, the United States will recommend to the Court that prosecution of CPC America on the Information shall be deferred pursuant to the terms and conditions set forth herein. CPC America agrees that the United States has probable cause to bring the charge in the Information, and that the charge is not frivolous, vexatious or made in bad faith. CPC America also agrees that if at a future time the government should move

to dismiss the Information pursuant to this Agreement, CPC America is not a "prevailing party" with regard to the Information. CPC America further waives any possible claim for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this case.

5. CPC America agrees to pay the United States $267,000 (the "Settlement Amount"), in equal quarterly installments of $66,750 each, commencing no later than March 1, 2010, and completing the final quarterly payment by or before March 1, 2011, by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the District of Delaware. The period between the execution of this Agreement and the completion of payment called for in this paragraph, or March 1, 2011, whichever comes earlier, shall be known as the "Deferral Period".

6. The United States agrees that if CPC America is in full compliance with all of its obligations under this Agreement, the United States, within thirty (30) days after the expiration of the Deferral Period, will file a motion with the Court seeking the dismissal with prejudice of the Information. Should the United States determine that CPC America has committed any crimes during the Deferral Period, it shall be subject to prosecution for any federal violation, including offenses arising out of the facts set forth in the Preamble.

7. CPC America agrees that the Deferral Period will be excluded from any speedy trial calculation pursuant to 18 United States Code, Section 3161. CPC America agrees that the Deferral Period will be excluded from any calculation concerning any applicable statute of limitations.

## IV. GENERAL TERMS AND CONDITIONS

8. It is expressly understood that this Agreement has no bearing on the rights and obligations of either party with respect to potential administrative suspension and debarment issues.

9. CPC America fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) which CPC America has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the United States' investigation and prosecution of the transactions described in the Preamble.

10. The parties agree that no representation contained in this Agreement, nor the fact of the parties having entered into this Agreement or complied therewith, shall constitute an admission or be utilized as an admission by any party except to prove and enforce the terms of this Agreement.

11. This Agreement, together with all the obligations and terms hereof, shall inure to the benefit of and shall bind assigns, successors-in-interest, or transferees of the parties thereto.

12. Each of the signatories of this Agreement represents that he or she has the full power and authority to enter into this Agreement.

13. This writing constitutes the entire agreement of the signatories with respect to the subject matter of this Agreement and may not be modified, amended or terminated except by a written agreement signed by the parties specifically referring to this Agreement.

14. All parties consent to the public disclosure of this Agreement. The parties agree that, upon acceptance by the Court, this Agreement and any order related thereto shall be publicly filed in the United States District Court for the District of Delaware. CPC America expressly agrees that it will not, through its attorneys, Board of Directors, officers or authorized spokespersons, make any public statement contradicting any statement of fact contained in the Preamble. Any such contradictory public statement by CPC America, its attorneys, Board of Directors, officers or authorized spokespersons, shall constitute a breach of the Agreement and

shall subject CPC America to prosecution pursuant to the terms of this Agreement. The decision of whether any statement by any such person contradicting a fact contained in the Preamble will be imputed to CPC America for the purpose of determining whether CPC America has breached this Agreement shall be in the sole and reasonable discretion of the United States. Upon the United States' notification to CPC America of a public statement by any such person that in whole or in part contradicts a statement of fact contained in the Preamble, CPC America may avoid breach of this Agreement by publicly repudiating such statement within 48 hours after notification by the United States. This paragraph is not intended to apply to any statement made by any individual in the course of any criminal, regulatory, or civil case initiated by a governmental or private party against such individual. In addition, consistent with CPC America's obligation not to contradict any statement of fact set forth in the Preamble, CPC America may take good faith positions in litigation involving any private party.

15. Except in the event of a breach of this Agreement, the parties agree that the criminal investigation (the "Investigation") arising from (a) the facts contained in, connected to, or involving the transactions described in the Preamble, or (b) other transactions that were the subject of grand jury subpoenas in the course of the Investigation, as well as CPC America's efforts to comply with grand jury subpoenas issued in the course of the Investigation, shall not be pursued further as to CPC America, or any of its parents, affiliates, successors, or related companies, and that the United States will not bring any additional charges against CPC America or any of its parents, affiliates, successors, or related companies, relating to these matters.

16. Should the United States determine that CPC America has committed a willful and material breach of any provision of this Agreement, the United States shall provide written notice to CPC America of the alleged breach and provide CPC America with a two-week period, or

longer at the reasonable discretion of the United States, in which to make a presentation to the United States to demonstrate that no breach has occurred or, to the extent applicable, that the breach is not willful or material or has been cured. The parties hereto expressly understand and agree that should CPC America fail to make a presentation to the United States within such time period, it shall be presumed that CPC America is in willful and material breach of this Agreement. The parties further understand and agree that the United States' exercise of reasonable discretion under this paragraph is not subject to review in any court or tribunal outside of the Department of Justice. In the event of a breach of this Agreement which results in a prosecution, such prosecution may be premised upon any information provided by or on behalf of CPC America to the United States at any time, unless otherwise agreed when the information was provided.

17.     CPC America agrees that, if CPC America's business operations are sold, whether by sale of stock, merger, consolidation, sale of a significant portion of its assets, or other form of business combination, or otherwise undergo a direct or indirect change of control within the Deferral Period under this Agreement, CPC America shall include in any contract for the sale or merger a provision binding the purchaser/successor to the obligations of this Agreement.

18.     It is further understood that this Agreement does not relate to or cover any criminal conduct by CPC America other than the conduct or transactions within the scope of the Investigation, as described in this Agreement.

19.     It is further understood that this Agreement does not bind Protective Products International Corporation or Protective Products of North Carolina LLC.

20.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement.

In Witness Whereof, the parties, through their duly authorized representatives, hereunder set their hands.

**ON BEHALF OF THE UNITED STATES OF AMERICA**

DAVID C. WEISS
United States Attorney

_____  Dated: 1/12/10
Keith Rosen
Assistant United States Attorney
Chief, Criminal Division

_____  Dated: 12 JAN 2010
David L. Hall
Assistant United States Attorney

**ON BEHALF OF CPC AMERICA**
**Acknowledgments**

I, Jason Williams, the duly authorized representative of CPC America, hereby expressly acknowledges the following: (1) that I have read this entire Agreement; (2) that I have had an opportunity to discuss this Agreement fully and freely with CPC America's outside attorneys; (3) that CPC America fully and completely understands each and every one of its terms; (4) that CPC America is fully satisfied with the advise and representation provided to them by its attorneys; and (5) the CPC America has signed this Agreement voluntarily.

CPC America

2010-01-08
DATE:                                    Jason Williams, Chief Financial Officer

**Counsel for CPC America**
The undersigned are outside counsel for CPC America. In connection with such representation, we acknowledge that: (1) we have discussed this Agreement with our clients; (2) that we have fully explained each one of its terms to our clients; (3) that we have fully answered each and every question put to us by our clients regarding the Agreement; and (4) we believe our clients completely understand all of the Agreement's terms.

1/11/10
DATE:                                    Bruce Udolf
                                         Attorney for CPC America